# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Statesboro Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 11:15 am, Sep 20, 2017

| | |
|---|---|
| In re:<br><br>NEIL K. SINGLETON,<br><br>        *Debtor.* | Chapter 7<br><br>Number 16-60415-EJC |
| NEIL K. SINGLETON,<br><br>        *Plaintiff,*<br><br>v.<br><br>YODER'S STORAGE BUILDINGS, LLC,<br>JOE OAKS, and EDDIE ANDERSON,<br><br>        *Defendants.* | Adversary<br><br>Number 16-06015-EJC |

## OPINION ON PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT, DEFENDANT'S AMENDED MOTION TO DISMISS, AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In February of 2014, Debtor Neil K. Singleton ("Plaintiff") purchased a 10 x 10 wooden storage building from Defendant Yoder's Storage Buildings, LLC ("Yoder's"). Some time prior to September 6, 2016, Yoder's began a court proceeding in Tattnall County, Georgia, to repossess the storage building, presumably because Plaintiff fell behind in his payments. According to the Complaint[1] in this adversary proceeding, on September 1, 2016,

---

[1] Plaintiff originally filed a "Motion for Sanctions." (Adv. Dckt. 1). The Clerk treated this document as a complaint, issuing a summons, a Rule 26(f) Notice, and a Rule 26(f) Report Format. (Adv. Dckt. 2).

Plaintiff received a call from Eddie Anderson, Chief Magistrate Judge of Tattnall County ("Defendant Anderson"), advising him that Yoder's was seeking a writ of possession. (Adv. Dckt. 1, p. 2). Plaintiff informed Defendant Anderson that he was in the process of filing bankruptcy and that he would notify Defendant Anderson when he had done so. *Id.* Defendant Anderson allegedly told Plaintiff that he had until September 8, 2016, to surrender the building "or face arrest". *Id.*

On September 6, 2016, Plaintiff filed his chapter 7 bankruptcy petition in this Court, listing Yoder's as a secured creditor. (Dckt. 1.) In his statement of intentions filed pursuant to 11 U.S.C. § 521(a)(2), Plaintiff also indicated his intention to reaffirm the debt with Yoder's. (Dckt. 1). As more fully described below, Plaintiff took various steps to notify Defendants of his bankruptcy case. Notwithstanding these notifications of Plaintiff's bankruptcy filing, Defendant Anderson issued a writ of possession on September 6, 2016, which was enforced by law enforcement officers on September 13, 2016, at Plaintiff's home in Reidsville, Georgia, and Yoder's repossessed the storage building. *Id.* at 3. In the process of enforcing the writ of possession, the officers are alleged to have intimidated Plaintiff by making various threats. *Id.*

Plaintiff filed this adversary proceeding, acting *pro se*, on September 15, 2016, against Defendants Yoder's, Oaks, and Anderson, alleging not only violations of the automatic stay, but also violations of 18 U.S.C. §§ 241 and 242, constitutional violations of "[d]ue process under the 4th and 5th Amendment," and "improper government seizure of

property."[2] As sometimes happens with *pro se* litigants, the procedural posture of this case is somewhat confusing.[3] Before the Court are Plaintiff's Amended Motion for Default Judgment as to Defendant Anderson (adv. dckt. 18), Defendant Anderson's Amended Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (adv. dckt. 21), and Plaintiff's construed Motion for Partial Summary Judgment as to Defendant Anderson (adv. dckt. 30).[4] For the reasons set forth below, the Court will DENY Plaintiff's Motion for Default Judgment, GRANT Defendant Anderson's Motion to Dismiss, and DENY as MOOT Plaintiff's construed Motion for Partial Summary Judgment.

# I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b).

# II. BACKGROUND

### A. The Writ of Possession and Plaintiff's Filing for Bankruptcy

---

[2] Plaintiff's due process and "improper seizure" claims appear to be against the two officers who enforced the writ of possession. (Adv. Dckt. 1, p. 5). Neither officer, however, is named as a defendant in this case.

[3] Plaintiff has filed duplicate pleadings and has mislabeled others. Some of his filings are inconsistent with others. They all suffer from a lack of organization or supporting legal authorities. Nevertheless, "[a] document filed *pro se* is to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted).

[4] There are currently no pending motions filed by Defendants Yoder's and Oaks.

According to the Complaint, Yoder's initiated a proceeding in the Magistrate Court of Tattnall County, Georgia, to foreclose on Plaintiff's wooden storage building. (Adv. Dckt. 1, p. 2). On September 1, 2016, Defendant Anderson informed Plaintiff he would "face arrest" if he failed to surrender the storage building to Yoder's within one week. (Adv. Dckt. 1, p. 2). On September 6, 2016, at 10:33 a.m., Plaintiff filed a Chapter 7 bankruptcy petition (dckt. 1). According to the Complaint, "[o]n September 6, 2016 at 10:46 a.m., Yoder's Storage Buildings, LLC was notified of [the] bankruptcy filings, [and] this enacted the stay of execution." (Adv. Dckt. 1, p. 2). Plaintiff, however, contends that on the same day, Defendant Joe Oaks ("Oaks"), an employee of Yoder's, called Defendant Anderson to inform him of Plaintiff's bankruptcy filing, and the two conspired to issue a writ of possession for the storage building. *Id.* The writ of possession, issued in Case No. 2016-18FC, reads as follows:

> TO: All and singular the Sheriffs or their lawful Deputies and to all lawful Constables of the State,
>
> GREETINGS:
>
> WHEREAS, pursuant to Code 44-14-230, as amended, the Plaintiff has been adjudged entitled to recover from the defendant the possession of certain personal property, the description and location of which is as follows: **1- STORAGE BUILDING**
>
> THEREFORE, you are hereby ordered to levy the aforesaid personal property and at the option of the plaintiff, to either surrender said property to the plaintiff for disposition in accordance with Code Title 11, as amended, or advertise and sell the same as in the case of levy and sale under execution as by law provided.
>
> This Writ shall automatically expire within 30 days after the effective date. Any party may request an extension of this Writ by filing a request with the court and

serving a copy upon all other parties, whereupon the matter shall be set for a hearing.

**SO ORDERED** this *6th day of September, 2016*

(Adv. Dckt. 15-2).[5]

Plaintiff received a copy of the writ of possession in the mail on September 9, 2016. (Adv. Dckt. 1, p. 2). The same day, Plaintiff delivered to Defendant Anderson in person "bankruptcy protection paperwork" to confirm his filing for bankruptcy relief. *Id.* at pp. 2-3. Defendant Anderson asked Plaintiff to produce paperwork from this Bankruptcy Court within 30 days, or the writ would be enforced. *Id.* at 3. On September 12, 2016, Plaintiff again attempted to notify Yoder's of his bankruptcy filing via email to Oaks,[6] and on September 13, 2016, notified in person another employee of Yoder's named "Jacob." *Id.* at 2.

Later that day, however, a Tattnall County Deputy Sheriff and a Reidsville Police Department Sergeant arrived at Plaintiff's residence to enforce the writ of possession. *Id.* at 3. Although Plaintiff produced his bankruptcy filings, the officers disregarded them. *Id.* Indeed, one of the officers allegedly threatened to arrest Plaintiff if he did not cooperate. *Id.* That same officer also allegedly drew his firearm and threatened to shoot Plaintiff's dogs.

---

[5] Where (as here) the pleadings refer to agreements and other documents, it is proper for the Court to consider the documents as part of the complaint in ruling on motions to dismiss. *Horne v. Potter*, 392 F. App'x. 800, 802 (11th Cir. 2010) (noting that it is proper to consider documents attached to the complaint or incorporated by reference, as well as any undisputed documents attached to the motions to dismiss that are central to the debtor's claim). In addition, the Court may consider matters of which judicial notice may be taken. *Id.*

[6] In his email to Oaks, Plaintiff stated he would voluntarily surrender the storage building. Oaks, however, did not receive this email because he was not at work on September 12, 2016. (Adv. Dckt. 1, p. 3).

*Id.* The officers proceeded to enforce the writ of possession and allowed Yoder's to repossess the storage building. *Id.*

### B. Adversary Proceeding and Plaintiff's Motion for Default Judgment

On September 15, 2016, Plaintiff initiated this adversary proceeding by filing a "Motion for Sanctions" (adv. dckt. 1), which the Court construes as a complaint, asserting that Defendants willfully violated the automatic stay, violated his rights under 18 U.S.C. §§ 241 and 242,[7] and violated his rights under the Fourth and Fifth Amendments.[8] On September 21, 2016, the Clerk issued a summons together with the Rule 26(f) Notice, the Rule 26(f) Report Format, and a document instructing Plaintiff to serve the summons, the Rule 26(f) Notice, and the Complaint. (Adv. Dckt. 2-1). On September 30, 2016, Plaintiff filed a certificate of service (adv. dckt. 5) representing that he served Defendants with a copy of the Complaint and "Adversary Notice Proceeding" on September 23, 2016.[9] On October 21,

---

[7] 18 U.S.C. §§ 241 and 242 are federal criminal statutes and thus provide no basis for civil liability. *Armstrong v. City of Boaz*, No. 4:16-CV-1065-VEH, 2017 WL 3129376, at *10-11 (N.D. Ala. July 24, 2017).

[8] In the Complaint, Plaintiff asserts the two officers "denied the Constitutional rights of Due process under the 4th and 5th Amendment and improper government seizure of property." Although the Fourth Amendment prohibits unreasonable searches and seizures, it does not contain a due process provision. U.S. Const. amend. IV. Thus, the Court construes this allegation as a Fourth Amendment unreasonable seizure claim and a Fifth Amendment Due Process claim. To the extent Plaintiff asserts these Fourth and Fifth Amendment claims against Defendant Anderson, such claims are barred by Eleventh Amendment immunity and judicial immunity for the reasons set forth below.

[9] On November 8, 2016, the Clerk issued a deficiency notice (adv. dckt. 12) informing Plaintiff that the certificate of service (adv. dckt. 5) relating to his Complaint failed to state that the summons was served. On November 29, 2016, Plaintiff filed an assortment of documents entitled "Refiling of Certificates of service: refer to documents 9, 11, 13, 15, 17, 18." (Adv. Dckt. 26). The documents in this collection are as follows: (1) the summons; (2) the Rule 26(f) Notice; (3) the Rule 26(f) Report Format; (4) the adversary proceeding cover sheet; (5) a certificate of service representing that Plaintiff served the "Advasary [sic] Notice" on

AO 72A
(Rev. 8/82)

6

2016, Yoder's and Oaks timely filed their Answer to Plaintiff's Complaint. (Adv. Dckt. 6).[10] As discussed below, Defendant Anderson did not file an Answer until November 21, 2016. (Adv. Dckt. 15).

Plaintiff did not obtain an entry of default from the Clerk as to Defendant Anderson pursuant to Federal Rule of Civil Procedure 55(a). But on October 28, 2016, Plaintiff filed a Motion for Default Judgment (adv. dckt. 9) against Defendant Anderson.[11] Defendant Anderson contends he was never served with Plaintiff's "Motion for Sanctions." (Adv. Dckt. 25, p. 1). Instead, in late September of 2016, he received an ante litem notice in

---

September 30, 2016; (6) Plaintiff's Amended Motion for Default Judgment; (7) a Request for Entry of Default as to Defendant Anderson; (8) a certificate of service representing that Plaintiff served his "Default Judgment Request" on November 17, 2016; (9) Plaintiff's "Answer" to Yoder's and Oaks' Answer; (10) a certificate of service representing that Plaintiff served a "Refile of service" on November 14, 2016; (11) Plaintiff's "Answer" to Defendant Anderson's original Motion to Dismiss; (12) a certificate of service representing that Plaintiff served his "Answer to Attorney McGovern for Defendant James Eddie Anderson" on November 22, 2016; and (13) a certificate of service representing that Plaintiff served Defendants with a copy of the "Adversary Notice Form B1040 Summons" on September 27, 2016. Regarding this last certificate of service, Plaintiff does not explain why he served the summons *four* days after he served the Complaint and "Adversary Notice Proceeding." (Adv. Dckt. 26, p. 33). Because these "refiled" certificates of service were not attached to particular pleadings, and because they do not all describe pleadings that were actually filed, the Court cannot tell what pleadings were served by Plaintiff or when. Fortunately, these deficiencies will not decide the case.

[10] On November 2, 2016, Plaintiff filed an "Answer" (adv. dckt. 11) in response to Yoder's and Oaks' Answer. Plaintiff's "Answer," however, merely reiterates the contentions in his Complaint in the form of defenses. Plaintiff subsequently refiled his "Answer" twice. (Adv. Dckt. 16, 17).

[11] Plaintiff originally moved for default judgment as to all Defendants. However, Yoder's and Oaks had timely filed their Answer pursuant to Federal Rule of Bankruptcy Procedure 7012. On November 8, 2016, Yoder's and Oaks filed their response to Plaintiff's Motion for Default Judgment (adv. dckt. 13). On November 21, 2016, Plaintiff filed an Amended Motion for Default Judgment, in which he withdrew his Motion for Default Judgment as to these Defendants. (Adv. Dckt. 18).

the mail from Plaintiff (adv. dckt. 15-1).[12] In October and November of 2016, Defendant Anderson received several additional documents in the mail from Plaintiff, including multiple copies of a civil cover sheet, a Rule 26(f) Report Format, a summons, and a scheduling notice. (Adv. Dckt. 25, pp. 3-13). Defendant Anderson contends he only learned he had been named as a defendant in the instant adversary proceeding when his counsel reviewed the case file on PACER on November 21, 2016. (Adv. Dckt. 24). That same day, Defendant Anderson filed his Answer. (Adv. Dckt. 15).

C. Defendant Anderson's Motion to Dismiss

Contemporaneously with his Answer, Defendant Anderson moved to dismiss Plaintiff's Complaint based on lack of service and judicial immunity. (Adv. Dckt. 15). On November 28, 2016, Plaintiff responded to Defendant Anderson's Motion to Dismiss. (Adv. Dckt. 20). On November 29, 2016, Defendant Anderson filed both an Amended Motion to Dismiss (adv. dckt. 21) and an Amended Answer (adv. dckt. 22), and in both of these pleadings Defendant Anderson asserts Plaintiff's claims are barred by Eleventh Amendment immunity and judicial immunity. On December 6, 2016, Plaintiff filed a "Motion to Dismiss

---

[12] In the ante litem notice, Plaintiff recited the allegations in his "Motion for Sanctions" and asserted "charges" that Defendant Anderson violated his rights under 18 U.S.C. §§ 241 and 242 and violated his right to due process. (Adv. Dckt. 15-1, p. 4). Although Plaintiff seeks a judgment in the amount of $10,800.00 from Defendant Anderson in the instant action, in the ante litem notice Plaintiff represented that he sought a judgment in the amount of $250,000.00, as well as "[a]utomatic recusal of any case in the future of any family member of Neil Singleton or immediate resignation of office." (Adv. Dckt. 15-1, p. 6). Plaintiff also threatened to bring a criminal charge against Defendant Anderson for making false official certificates or writings, in violation of O.C.G.A. § 16-10-8. *Id.* at 8. Additionally, unlike in the instant action, Plaintiff asserted claims against Tattnall County, the Tattnall County Sheriff's Office, the City of Reidsville, the Reidsville Police Department, and the two officers who enforced the writ of possession.

Immunity Defense" (adv. dckt. 28) requesting the Court "rule[] against a motion to dismiss made by . . . James E. Anderson." The Court therefore construes Plaintiff's "Motion to Dismiss Immunity Defense" as a response in opposition to Defendant Anderson's Amended Motion to Dismiss.

### D. Plaintiff's Motion for Partial Summary Judgment

On December 10, 2016, Plaintiff *emailed* Defendant Anderson's counsel a document entitled "Request for Rejection of Immunity Defense" asking the Court to "consider the following facts and arguments and issue summary judgment." (Adv. Dckt. 29-2, p. 1). In this document, Plaintiff argues Defendant Anderson is not entitled to judicial immunity. Before Plaintiff actually filed this document with the Court, Defendant Anderson filed a "Response to Plaintiff's Motion for Summary Judgment" on January 3, 2017. (Adv. Dckt. 29). On January 9, 2017, Plaintiff filed his "Request for Rejection of Immunity Defense" with the Court. (Adv. Dckt. 30). The Court construes this document as a motion for partial summary judgment challenging Defendant Anderson's judicial immunity defense.[13]

---

[13] Plaintiff's Motion for Partial Summary Judgment is premature, of course. Once the Clerk treated Plaintiff's "Motion for Sanctions" as a complaint initiating an adversary proceeding, the ordinary course would have called for the parties to submit a joint Rule 26(f) report, which would have prompted the Court to issue a scheduling order. The Court's scheduling order would have set a deadline for motions for summary judgment. That entire procedure was essentially scrapped when Plaintiff, prematurely, filed a Motion for Partial Summary Judgment on January 9, 2017. The parties have failed to file the joint Rule 26(f) report that was due on December 19, 2016. Nor has the Court issued a scheduling order.

E. Hearing and Stay of Discovery

On March 15, 2017, the Court held a hearing and status conference on all the pending matters in this case. Subsequently, the Court granted Defendant Anderson's Motion to Stay Discovery (adv. dckt. 27) pending resolution of his Motion to Dismiss. (Adv. Dckt. 37). The Court will now address Defendant's Motion to Dismiss, as well as Plaintiff's Amended Motion for Default Judgment (adv. dckt. 18) and Plaintiff's construed Motion for Partial Summary Judgment (adv. dckt. 30).

**III. ANALYSIS**

A. Plaintiff's Motion for Default Judgment

Plaintiff contends the Court must enter default judgment against Defendant Anderson for failure to timely file his Answer. The Court disagrees. Federal Rule of Bankruptcy Procedure 7055 makes Federal Rule of Civil Procedure 55 applicable to adversary proceedings. Pursuant to Federal Rule 55, obtaining a default judgment is a two-step process. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default is entered, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Here, no default has been entered as to Defendant Anderson. Although the Court has the authority to enter a default under Federal Rule 55(a), the Court declines to do so here. *See Allstate Prop. and Cas. Ins. Co. v. Haslup*, No. 2:10-CV-0191-WCO, 2012 WL 12953465, at *6 (N.D. Ga. Jan. 12, 2012) (noting court has inherent power to enter default).

Even if the Court entered a default as to Defendant Anderson, a default judgment would not be proper as to Defendant Anderson. A court has discretion to determine whether to enter a default judgment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Indeed, a default judgment is "judicially disfavored." *Patray v. Northwest Pub., Inc.*, 931 F. Supp. 865, 868 (S.D. Ga. 1996). Although a defendant in default is deemed to admit the plaintiff's well-pleaded allegations of fact, the defendant "is not held to admit . . . conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Thus, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). As set forth below, default judgment is not proper in this case because Plaintiff's Complaint is subject to dismissal.[14] Thus, the Court will deny Plaintiff's request for entry of default judgment.

B. Motion to Dismiss Standard

A complaint should be dismissed under Federal Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure

---

[14] Indeed, as to Plaintiff's claims against Defendant Anderson in his official capacity, the Court cannot enter a default judgment because Eleventh Amendment immunity deprives the Court of subject matter jurisdiction. *Yu v. Perry*, 82 F. App'x 993, 994 (5th Cir. 2003) (per curiam).

8(a)(2),[15] a plaintiff needs only to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. However, allegations in the form of legal conclusions, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The rule "does not impose a probability requirement at the pleading stage," but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule 8(a) because it has merely "alleged" but not "show[n] . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

### C. Official and Individual Capacity Claims

From the Complaint, the Court is unable to determine whether Plaintiff seeks to hold Defendant Anderson liable in his official capacity or in his individual capacity. Suits against state officials in their official capacity "should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Individual-capacity suits, on the other hand, "seek to impose individual liability upon a government officer for actions taken under color of state

---

[15]Federal Rule 8(a)(2) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008.

law." *Id.* Out of an abundance of caution, the Court assumes Plaintiff brings both official-capacity and individual-capacity claims against Defendant Anderson.

### D. Eleventh Amendment Immunity

To the extent Plaintiff asserts an official-capacity claim[16] against Defendant Anderson, such claim is barred by Eleventh Amendment immunity.[17] The Eleventh Amendment to the United States Constitution bars lawsuits against a state in federal court without the consent of the state. *Manders*, 338 F.3d at 1308. This protection extends to entities acting as an "arm of the state." *Id.* Whether a defendant is an "arm of the state" must be analyzed "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* In this analysis, courts consider four factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. *Id.* at 1309.

Here, Defendant Anderson was clearly acting as an arm of the State of Georgia. The issuance of writs of possession, the particular function at issue here, is delegated to magistrates by Georgia law. O.C.G.A. § 44-14-231. Under Georgia law, the magistrate court

---

[16] Eleventh Amendment immunity only bars official-capacity claims. *Manders v. Lee*, 338 F.3d 1304, 1308 n.7 (11th Cir. 2003).

[17] Defendant Anderson raised Eleventh Amendment immunity as an affirmative defense in his Amended Answer (adv. dckt. 22, p. 2) but not in his original Answer (adv. dckt. 15). Regardless, an "assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction." *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998). Thus, failure to plead Eleventh Amendment immunity in an answer does not constitute a waiver of the defense. *Shedrick v. Dist. Bd. of Tr. of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1359 (S.D. Fla. 2013).

is a constitutionally created office within the state's judicial branch. *See* Ga. Const. Art. VI, § 1, para. 1 ("The judicial power of the state shall be vested exclusively in the following classes of courts: magistrate courts, probate courts, juvenile courts, state courts, superior courts, Court of Appeals, and Supreme Court."); Ga. Const. Art. VI, § 3, para. 1 ("The magistrate, juvenile, and state courts shall have uniform jurisdiction as provided by law."). Thus, Georgia law defines magistrates as state officers tasked with applying the law of the state, not the county. *Watts v. Bibb Cnty, Ga*, No. 5:08-CV-413 (CAR); 2010 WL 3937397, at *11-12 (M.D. Ga. Sept. 30, 2010) (holding Georgia magistrate acted as arm of state in appointing associate magistrates).

The State of Georgia also exercises a high degree of control over magistrates. Only the state legislature has the power to provide for the number of magistrates serving in a county and the method for filling vacancies. O.C.G.A. § 15-10-20(e). Georgia law requires magistrates to be trained in accordance with requirements set by the Georgia Magistrate Courts Training Council. O.C.G.A. § 15-10-25. Under Georgia law, magistrates are subject to discipline, removal, and involuntary retirement only by the Judicial Qualifications Commission. Ga. Const. Art. VI, § 7, para. 6 (the Judicial Qualifications Commission shall have "the power to discipline, remove, and cause involuntary retirement of judges."); Ga. Const. Art. VI, § 1, para. 3 (defining "judge" as including magistrates). Finally, although magistrates' salaries are paid from county funds, state law sets the minimum salary for magistrates, and thus this factor does not weigh against immunity. O.C.G.A. § 15-10-23. *Cf. Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015) (holding sheriffs act as arm of State

of Georgia when making personnel decisions despite receiving county funding). Based on the factors set forth in *Manders*, therefore, Defendant Anderson acted as an arm of the State of Georgia and is entitled to Eleventh Amendment immunity.

### E. Judicial Immunity

To the extent Plaintiff asserts an individual-capacity claim[18] against Defendant Anderson, such claim is barred by judicial immunity. A judge acting in his judicial capacity is absolutely immune from suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Because the public interest requires that "judges should be at liberty to exercise their functions with independence and without fear of consequences," judicial immunity "applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). A judge's "errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." *Id.*

Judicial immunity may be overcome in only two circumstances. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. In the Eleventh Circuit, courts apply four factors to determine whether a judge acted in his judicial capacity: whether "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v.*

---

[18] Judicial immunity bars individual-capacity claims. *Eubank v. Leslie*, 210 F. App'x 837, 845 (11th Cir. 2006) (per curiam).

*Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). These four factors must be broadly construed, and in some cases "immunity is to be afforded even though one or more of the . . . factors is not met." *William B. Cashion Nevada Spendthrift Trust v. Vance*, 552 F. App'x 884, 886 (11th Cir. 2014) (per curiam).

"Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11. In applying this rule, "the scope of the judge's jurisdiction must be construed broadly." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). A complete absence of all jurisdiction requires the matter upon which the judge acted to be clearly outside the subject matter jurisdiction of the court over which the judge presides, not merely in excess of the court's jurisdiction. *Dykes v. Hosemann*, 776 F.2d 942, 947-48 (11th Cir. 1985). The United States Supreme Court has explained this distinction as follows:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7.

Here, Plaintiff seeks monetary damages against Defendant Anderson for issuing the writ of possession and conspiring with Oaks to violate the automatic stay. The Court finds Plaintiff's claim is barred by judicial immunity. First, Defendant Anderson's issuance of the writ of possession was clearly performed in his judicial capacity. Issuing a writ of possession is a normal judicial function. *See Hill v. Filsoof*, 274 Ga. App. 474, 477,

618 S.E.2d 12, 15 (2005) (affirming magistrate court's issuance of writ of possession). Defendant Anderson issued the writ of possession in Case No. 2016-18FC, a case pending before him in which Yoder's had been adjudged entitled to recover the storage building. (Adv. Dckt. 15-2). Indeed, Plaintiff acknowledges that Yoder's filed paperwork with the Court to obtain the writ of possession. (Adv. Dckt. 1, p. 2). Accordingly, Plaintiff fails to allege Defendant Anderson issued the writ of possession in any extrajudicial capacity.

Second, Defendant Anderson's actions were not taken in the complete absence of all jurisdiction because Georgia law authorizes magistrate judges to issue writs of possession for personal property. O.C.G.A. § 44-14-231. *See also* O.C.G.A. § 15-10-2 (setting forth jurisdiction and powers of magistrates). Plaintiff contends Defendant Anderson "stepped outside his jurisdiction" by maliciously conspiring with Oaks to violate the automatic stay, but this argument is without merit. (Adv. Dckt. 28, p. 1). As set forth above, judicial immunity applies even where a judge is alleged to have acted maliciously. *Pierson*, 386 U.S. at 554. Thus, even if he did engage in conspiratorial *ex parte* communications with Oaks, Defendant Anderson would still be entitled to judicial immunity. *See Dykes*, 776 F.2d at 946. Finally, although Plaintiff cites numerous cases for the proposition that judicial actions taken against a debtor in violation of the automatic stay are void *ab initio*, none of these cases involve the issue of judicial immunity presently before the Court. Thus, in his individual capacity, Defendant Anderson is absolutely immune from Plaintiff's claim for damages.

## IV. CONCLUSION

For the reasons set forth above, Defendant Anderson is entitled to Eleventh Amendment immunity and judicial immunity, and thus Plaintiff's claims against Defendant Anderson must be dismissed pursuant to Federal Rule 12(b)(6). Consequently, Plaintiff's Amended Motion for Default Judgment (adv. dckt. 18) must be denied, and Plaintiff's construed Motion for Partial Summary Judgment (adv. dckt. 30) must be denied as moot. A separate Order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia, this 20th day of September, 2017.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia